Our last case this morning is Stone v. Signode Industrial Group. Mr. Torres. May it please the Court. This case involves a breach of contract claim for alleged vested retiree medical benefits. The District Court erred in holding that those benefits survived the termination of the 2002 agreement because it failed to apply two controlling contract interpretation principles that this Court has applied in several cases that defeat plaintiff's claim. First, in interpreting a contract, the document should be read as a whole so that all of its parts are given effect. Second, in contracts that have an alleged promise of vested benefits and a termination clause like the one here, any tension between those provisions must be resolved by finding that the alleged vested benefit is qualified by the contract's termination right. Is there a possibility of vested benefits extending past the termination of the agreement in any case? Yes, Your Honor. This Court has found at least ambiguity in cases where they found that the right was not absolutely qualified, so there was at least a fact question as to whether or not the benefits continued. Conversely, this Court has found in a number of cases that were, like in this case, that the termination right was akin to a reservation of rights clause. The reconciliation of those two types of promises led to a lifetime benefit that was limited to the term of the agreement. In this case, that's further reinforced by the fact that the 2002 agreement only addressed a single subject, the retiree medical benefits that the plaintiff seek. And whatever benefits the 2002 agreement promised in Section 6, Section 7 unambiguously gave defendants the unilateral right to terminate the 2002 agreement. The plaintiffs have never disputed this reading of Section 7, choosing instead to simply and erroneously claim that Section 7 should be ignored. Wouldn't the exercise of termination rights under Section 7 provide a mechanism to make sure that no new retirees were added to the plan? In this case, it was already a closed group, Your Honor. There was to be no future retirees. As of when? When the agreement was entered into in 2002, they set up a definition that said we're going to cover this population along with an additional group that would retire before the expiration of this agreement in 2004. So there was no future group to foreclose from coming into this agreement at this point in time. It was a closed group of retirees. So what do we make of Mr. Kuchta's testimony about having, after 2002, having told employees make sure you retire before the plant closes? He was talking about the same thing. He was saying get out before 2004, which is when this contract was set to expire. And they would then get lifetime benefits, correct? No. Well, that's what Mr. Kuchta claims. Right. And that's what was then paid for 11 years after the plant closed, right? Yes, they continued to pay. What changed in 2015? What changed in 2015? Well, the facts changed is that ITW transferred this obligation to Cignote, and Cignote exercised their rights at hand under this agreement to terminate these benefits. The plant had already closed. So some new lawyers looked at the agreement? I wasn't there at the time as to who looked at it, Your Honor. So in the principles that you've talked about in terms of contract interpretation, in many of our cases or, for that matter, in Reese and Tackett, was there explicit language to the effect that benefits would not be reduced or terminated notwithstanding the expiration of the agreement? This Court has considered a number of cases where the language was the benefits would be for life or until death, so. That's not my question. Okay. Where there's explicit language saying that the benefits survive the expiration of the agreement. I'm not aware of a specific case where that specific language was construed. What's the best? I'm sorry? What's the best language for you in our cases where there is such explicit language promising continuation of benefits for life after expiration of the agreement in question? The best cases from our perspective or the most analogous cases, Your Honor, would be the Rockford Powertrain, Valone, and Bushy Creek cases, Your Honor. In all of those cases, to varying degrees, the promise was that the retirees would be continued until death, that the coverage would be continued for the spouse. That's Rockford Powertrains. In Valone, there's no discussion of the specific language, Your Honor, but the court noted that the defendants conceded the benefits were lifetime. And in Bushy Creek, the language quoted by the court was for life. And in each of those cases, this court reconciled that language was a durational language in those cases. And there was no language explicitly in those agreements like what we have here.  They didn't have anything close, right? It says where the benefits extend beyond the termination of the agreement, addressing the precise problem that has come up so often, right? Well, that's not the only thing that Section 6 says, Your Honor. It also says that those benefits will continue unless the parties agree otherwise. Wouldn't it be kind of odd to suggest that the immediately following paragraph in the very same agreement signed the same day is the agreement otherwise? I don't believe there's anything unnatural about saying may agree otherwise and having an additional provision that allows for that termination, Your Honor. Labor contracts are negotiated over years. The fact that they may refer to the next provision or some other provision is not a limitation on that right. It doesn't say may agree otherwise in some future agreement. It doesn't say may agree otherwise in some later agreement. It simply says may agree otherwise. Section 7 is an agreement otherwise, Your Honor, because it specifically gives the defendants a unilateral right to terminate that agreement. The agreement here stems from a time fairly shortly after the Connor Steele decision, doesn't it? Going back to the 90s? Yes, Your Honor. The original of the 94 agreement was entered into sometime after Connor Steele, correct? And the language here essentially traces that language from Connor Steele, correct? Part of it does, Your Honor. It doesn't include Section 7 language in Connor Steele. This court noted that in S.R. Industries. Isn't there a termination language in the agreement for Connor Steele? No. The court found in Connor Steele that there had to be a bilateral negotiation to change the benefits. That's different than here where we have the unilateral termination right in Section 7. So did the CBA under Connor Steele go on forever? I don't know, Your Honor, but the language was different because there it required bilateral negotiations to change the benefits, and here we have a unilateral termination right. And that's something, and I'd like to reserve the rest of my time for rebuttal, but one question the plaintiffs haven't answered here is, what is terminated pursuant to Section 7 in an agreement that provides only one thing, retiree medical benefits, except for the benefits described in Section 6? Mr. Torres, do you dispute, as a factual matter, Mr. Kuchta's account of the invitation to retire before the plant closed so that retirees would receive lifetime benefits? I don't dispute that's what Mr. Kuchta claims he said, but if you read his affidavit. Do you dispute that that's what he said? If we got into discovery, I'm sure we would certainly. In this case, there were cross motions, correct? There was cross motions, but no discovery, Your Honor. Did you dispute that assertion? I believe we did, Your Honor. Thank you. May it please the Court. John Adam on behalf of the retirees in the Steelworkers Union. To answer your question, Judge, what is the effect of Section 7? It's exactly what your question said is, that future employees, if they were to retire, would not vest. The termination clause, the general duration clause, simply ended the contract. It is not a reservation of rights clause. It does not give the company, as it now claims, a unilateral right to terminate retiree health care. I'd like to make three main points along those lines. First, the district court correctly held that this language, a promise of health care that shall continue, quote, notwithstanding the expiration of this agreement, benefits shall not be terminated so long as the retiree remains retired or their surviving spouse receives a pension. Those are two durational promises. That is about as clear as one can get in a collective bargaining contract. What it answers is the question of how long do the benefits last. Do they last only during the term of the contract? The contract says no, notwithstanding the expiration. Okay, how long do they last? As long as the retiree remains retired or their surviving spouse receives a pension. So under those contract terms, that creates a vested benefit that obviously continues after the expiration. And Reese and Tackett say to the courts, apply ordinary contract principles, which the Seventh Circuit did before Tackett and Reese. What the Sixth Circuit did not is what the Supreme Court said. But Tackett and Reese talk about is there explicit language, is there implied language, are there industry practices? You just can't find vesting based upon silences, which is what the Sixth Circuit had done, because the Sixth Circuit prior to Tackett had applied presumptions in favor of retirees. And this court in Chicago v. Underwood noted under Tackett there are no presumptions for or against vesting. And so here we simply have what I consider to be great language. In the Seventh Circuit in Temme said you don't need magic words. You don't need explicit magical words. But in essence, we have magical words here. We have very excellent language that any reasonable reading of it means that when you retire your benefits will continue after expiration and that they will last as long as you remain retired or you receive a surviving spouse benefit. And the company wants to take that language and read it out of the contract entirely by pointing to Section 7, a general duration clause, a general duration clause that the Supreme Court in Tackett and that the Supreme Court in Reese said doesn't prevent the vesting of benefits as long as there's language that indicates that the benefits are to survive expiration. By any reading of this contract, the benefits must survive expiration. That's what they say. Now, it's not just me saying it. It's not just the district court. It's what the Fourth Circuit said in H.K. Porter. It's what the Ninth Circuit said in Connor Steele. It was the exact language. Section 6 is the exact language that was in Connors and H.K. Porter. The fact that those contracts had duration clauses are irrelevant. Why wouldn't anyone even point to the duration clause to somehow trump this specific promise? The Section 7 contract clause with the unilateral right of termination on 120 days' notice, that was in 2002, is that right, while the plant was still open? Yes. No one knew in 2002 what would happen in 2004. Right, so there were still employees actively in the bargaining unit. We're not just talking about retirees only. Correct. In 2000, yes, ITW took over ACME out of bankruptcy, and the bankruptcy court had approved this language to help the company survive, and there I would point out the union and the company did agree to reduce benefits for people that were already retired under the may otherwise agree language, and they went to the bankruptcy court, and the bankruptcy court said to keep this plant alive, to keep the benefits in place, they reduced them, and that's how you got the 2002 pensioner CBA. The anticipation was it would expire like all contracts expire in 2004 along with the regular contract. No one knew in 2002 that this was the last agreement. They only knew in 2004 when ITW pulled the plug and said we're closing the plant, and that's when Mr. Kuchka and the union negotiated a plant closing agreement that terminated the contract and that terminated the pensioner's benefit when the plant closed in August of 2004, and that's why Mr. Kuchka in unrebutted evidence told people if you want to get your benefits for life, you better retire before this contract expires. That's the significance of the duration clause, that after the contract is over, assuming there was no new contract, an employee cannot say five years afterwards, hey, I'm vested. No, you need to retire during the term of the contract, and that's what Connor Steele says. That's what H.K. Porter said, and that's what any reasonable reading of the contract would say, but you don't have to believe me. You don't have to believe what the district court found. It's what the company did for 11 uninterrupted years, 11 years a corporation, a privately held corporation paid millions of dollars in retiree health care benefits when the contract had expired, terminated in 2004. That is conduct that this court has held is a practical interpretation of a contract that explains what the parties intended. The Supreme Court says there's no better way to figure out what a contract is than to look at how the parties applied it, interpreted it over years, and now you have a company where the contract ends in 2004, and 11 years later because ITW spins off Sinode, they magically say, oh, we can end benefits. One of the company's argument is that they have the ability to terminate an expired contract. Some of it doesn't even make sense. Some of it's not logical. Did the plant close at the same time as the 2002 agreement expired, or was there some sort of a gap? Well, the plant closed in August of 2004, and the plant closing agreement said the contracts end when the plant shuts down because that was negotiated in April of 2004. No one knew when the plant would actually close. That's why Mr. Kuczyk is telling people, hey, you better retire before the plant closes to get your benefits. So the February 29, 2004 expiration date of the 2002 contract. Was extended out until the plant closed. Okay, so by agreement. Right. Okay. And that's why people retire, and that's why when they retire they continue to get benefits for 11 years. And that's logical. It's consistent with the contract language. And what the company is trying to do is pound a square peg into the round hole, if I said that right. They're saying a duration clause is a reservation of rights. If you look at all the cases they cite and you look at what the district court said, all of those cases, virtually none of them have any language that's even close to vesting, but they all say the company reserved the unilateral right to terminate benefits. Or the language says these benefits shall last only during the duration of the contract. That is a far different situation than what we have here. We have language that is not only explicit, that it addresses every factor that Tackett was concerned about, and it addresses every factor that Reese was talking about. Mr. Adam, what's the current status quo as of now? Benefits were terminated. And the district court ordered a permanent injunction. And our court stayed that order, correct? Yes, it did. Subject to a bond. Subject to a bond. Yes, it did. So for the retirees, they're taking care of their own health care right now, and if you succeed, they would get repaid for those? They'll be restored, and then there will be issues of damages that would be made whole. Yes, that's how it would work. And that's what we've essentially stipulated to an order that said, we'll stay damages determinations until this court rules on the underlying liability. I will tell you, I thought that the injunction would remain in effect while the case was being litigated, but that's a whole other separate issue. So that's how it would work, and that's why we want to go back to the district court and then figure out, get the benefits restored, and then figure out the damages. But one final point. Even assuming somehow, and I really can't imagine, but somehow you say, well, maybe this language is ambiguous. I can't get my head around that. Let's assume you say, well, maybe there's some ambiguity here. I don't know. Whatever. At the very least, it's ambiguous under re-syntactic, and what do you do? You look to extrinsic evidence. We offer Mr. Kutska other testimony, 11 years of history, all unrebutted. The company offered zero, zip, nada, a single piece of extrinsic evidence, and they did not dispute what he said. They simply said, ignore it. We believe, for those reasons, by every measure, contract language, federal precedent, Fourth Circuit, Ninth Circuit, Reese-Tackett, all these court's decisions, we're entitled to have the injunction affirmed, and the retirees are entitled to get their health care benefits back. I'm done unless you have any further questions. Thank you. Thank you. Mr. Torres. Thank you, Your Honor. All the points that plaintiffs note here have been addressed and considered by this court in analogous cases. He says Section 7 is not a reservation of rights clause. In Auburn gear, this court looked at language it talked about for the term of the agreement and called it a reservation of rights clause. Those are just labels. The question is, what is the effect of Section 7? And it is no different than saying the benefits last for the duration of the agreement or the employer reserves a right here. They have the unilateral right to terminate the agreement. They are functionally the same thing. As to the construction of these promises, this court in Barnett said that benefits described as lifetime are not really vested when the same contract also reserves a right to revoke them because the only proper construction is that lifetime benefits are good for life unless revoked or modified. Under your reading, what would it take to actually vest lifetime benefits? Bushy Creek, the decision of this court, offers some suggested language which says that these benefits will continue on, essentially regardless of whether there are successive contracts that expire. Notwithstanding the expiration of this agreement.  But here, that language is limited here, Your Honor. It is not standing in and up by itself. So I think Bushy Creek is an example from this court of language that they suggested would take them beyond the expiration agreement consisting with Tackett and Reese. This argument about general duration clauses sort of yielding to a vested benefit, that turns Tackett and Reese on their head. They said you apply the general duration clause even if it doesn't specifically mention retiree benefits. And then just last point on extrinsic evidence. We didn't concede anything. This was an early summary judgment motion by agreement of the parties. There was no discovery. So the snippets that they've offered is certainly in no way emblematic of what the record in this case holds. And for those reasons, we'd ask that the district court be reversed and its junction be vacated. Thank you. All right. Our thanks to all counsel. The case is taken under advisement. And that concludes our calendar for today. The court will be in recess. Thank you.